UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-cv-81016-RNS

LISA ROHDY,

    Plaintiff,

v.

WAL-MART STORES, INC,

    Defendant.
_____/

**SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

    Plaintiff LISA ROHDY brings this action against WAL-MART STORES, INC., [Wal-Mart] in her individual capacity. Plaintiff alleges the following [hereinafter referred to as Plaintiff] and brings this action against Wal-Mart Stores, Inc., [Wal-Mart]. Plaintiff alleges the following:

**INTRODUCTION**

    1.    This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, *et seq.*, to correct unlawful employment practices that discriminate on the basis of gender and to provide appropriate relief to the Plaintiff, like dozens of other female employees who were adversely affected by such practices. Defendant Wal-Mart has engaged in, and continues to engage in, unlawful gender discrimination by denying female employees equal pay and promotional opportunities.

    2.    This action springs from *Dukes v. Wal-Mart*, the national class action filed more than ten years ago. In *Dukes*, the United States District Court for the Northern District of California certified a national class of female Wal-Mart and Sam's Club employees challenging

Wal-Mart's retail store pay policies as discriminatory against women. On June 20, 2011, the United States Supreme Court reversed that class certification order, imposing new guidelines for class actions in Title VII employment discrimination cases.

3. Plaintiff is a prior class member from *Dukes*, and now brings this action in her individual capacity. **(See Factual Background, Procedural Posture, and Wal-Mart Corporate Policies, attached and incorporated herein as Exhibit 1**).

**Timeliness**

4. All claims arising on or after December 26, 1998, which is 300 days before the earliest charge filed with the EEOC by a former member of the *Dukes* class, are timely, as they have been the subject of an EEOC charge and class claims in *Dukes*, and then a subsequent EEOC charge within the deadline following the end of tolling in *Dukes*.

5. Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII by timely filing a charge with the EEOC alleging gender discrimination by Wal-Mart. The Plaintiff along with other class members was a member of the national class certified in *Dukes*. While that certification order was working its way through the appellate process, time periods for filing EEOC charges and subsequent litigation for all former class members were tolled. On August 19, 2011, the Northern District of California issued an order in *Dukes* establishing common deadlines for all members of the formerly certified class to file individual charges with the EEOC. The pertinent portion of that order in this case gave former class members in states with a worksharing agreement who would normally have 300 days to file charges, until May 25, 2012 to file a charge.

6. Plaintiff has met that deadline. (**See Composite Exhibit A which is a true and correct a copy of the Charge filed by Plaintiff, See also EEOC Questionnaire, attached as Exhibit 2**).

7. Plaintiff has received her Right to Sue from the EEOC. (**See Composite Exhibit B, which is a true and correct copy of the Notice and Right to Sue issued to the Plaintiff**).

8. Plaintiff filed her claim within 90 days in a case styled *Radtka et. al, v. Wal-Mart Stores, Inc.,* Case 19-80153 DE 1).

9. On July 12, 2019 the Court severed her claim and ordered the filing of an amended complaint. This Amended Complaint was timely filed in compliance with *Radtka et. al, v. Wal-Mart Stores, Inc.,* Case 19-80153 DE 33.

10. This action was timely filed, and Plaintiff has exhausted all administrative deadlines.

## JURISDICTION AND VENUE

11. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ 1331 and 1343(a)(4).

12. Venue is proper in this district pursuant. The original action was filed in this judicial district and no objection was raised. The parties and witnesses to this action are located in several states throughout the United States, including several in this venue.

13. Wal-Mart currently operates 293 Wal-Mart stores and Sam's Clubs in Florida where it employs more than 94,000 workers, many in this venue.

14. Plaintiff LISA ROHDY is a female resident of Brevard County, Florida

15. Defendant is a Delaware corporation with stores throughout Florida. Its corporate headquarters are located in Bentonville, Arkansas. In Florida, Wal-Mart operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters, and Sam's Clubs.

16. Plaintiff contends that Wal-Mart engaged in gender discrimination in compensation and promotional practices. Her evidence of the discriminatory treatment she experienced includes her own compelling story, and those of the hundreds of other female employees with similar examples of gender discrimination in the same region.

## Exhaustion of Remedies

17. Plaintiff has exhausted her administrative remedies and complied with the statutory prerequisites of Title VII by timely filing her charge of discrimination. (See Exhibit A).

18. Plaintiff received a Right to Sue from the Equal Employment Opportunities Commission, and timely filed this action. (**See Notice of Right to Sue attached hereto as Exhibit B**).

## PARTIES

19. Defendant Wal-Mart Stores, Inc., is a Delaware corporation with stores throughout Florida. Its corporate headquarters is located in Bentonville, Arkansas. In Florida, Wal-Mart operates retail stores doing business as Wal-Mart Discount Stores, Wal-Mart Supercenters, and Sam's Clubs.

20. Wal-Mart currently operates 293 Wal-Mart stores and Sam's Clubs in Florida where it employs more than 94,000 workers.

21. Wal-Mart's operations are divided into regions.

22. During the time relevant to the Plaintiff herein, there were a total of 41 regions: 35 Wal-Mart regions and six Sam's Club regions.

23. The three regions all falling within the Southeastern United States, consist of:

   a. Wal-Mart Region 10—approximately 88 Wal-Mart retail stores located in Florida; and

   b. Wal-Mart Region 46—approximately 70 Wal-Mart retail stores, mostly located in Florida, as well as Georgia and South Carolina; and

   c. Sam's Club Region 6—one of only 6 Sam's Club regions in the United States, consisting of approximately 77 Sam's Club retail stores, mostly located in Florida, as well as Georgia, South Carolina, North Carolina, Alabama, Tennessee, and Virginia.

   d. This action concerns Region 10.

24. Plaintiff contends that in the Region(s) she worked, Wal-Mart maintained a pattern or practice of gender discrimination in compensation and promotion. Plaintiff brings this claim individually but does so with the knowledge of other Plaintiffs from the same Wal-Mart Region(s). (**See Regional Chart attached hereto as Exhibit C**).

## WAL-MART HAD KNOWLEDGE OF DISPARITIES

25. WAL-MART knew about disparate employment practices, yet Defendant did nothing to rectify these discriminatory practices.

26. Wal-Mart has known for years about the disparity in promotional opportunities for women. Wal-Mart's own internal bench-marking studies concluded that it fell significantly behind other comparable retailers in terms of the representation of women in management.

27. June 2000, a Wal-Mart report concluded "Wal-Mart's women in management per cent (32.4%) is significantly behind several of the other retailers reporting (43.2% to 65.3%)." Ex. 119. This was particularly striking because Wal-Mart was drawing these

managers largely from an hourly workforce which was 62.6% women, "among the highest" of the companies reporting. Ex. 119 at 315.

28. Wal-Mart's People Division has annually prepared reports that, for the relevant time periods, also show well documented underrepresentation of women.

29. Wal-Mart's documents show that despite knowledge of disparities, little was done to address the issue. For Wal-Mart, excluding most women from management was the rule, not the exception, as the number worsened over time. Wal-Mart was behind both the Fortune 500 and General Merchandisers in the development of women into Corporate Officers.

30. Wal-Mart has been aware of its gender discrimination problem since at least 1992, if not before, when it started the Women In Leadership program. The organization documented the concerns of the female employees that included complaints that included among other issues that stereotypes limited the opportunities offered to women, and that career decisions are made for associates based on gender.

31. The diversity situation in 2001 worsened and the number of women in management were actually decreasing, rather than improving.

32. Wal-Mart was also aware that women on average were paid less than men holding the same positions. Wal-Mart conducted a Minority/Gender Pay Analysis of retail store management positions, in which it concluded that "average salaries for female and minority males are below the overall average pay for most jobs," and "[a]verage pay increases for minority males and females are generally below overall average income ratio across most jobs."

33. Wal-Mart had long been aware of problems with its hourly compensation system. In 2000, it identified several issues not addressed until 2004 or later:

- Ineffective pay administration in the field (*e.g.*, pay inequities between associates with comparable service and performance levels);

- Possible inappropriateness of merit/performance pay approach;

- Often start rate is based on what the applicant was earning and not on what job he or she will be performing.

34. Wal-Mart discussed its problems in even greater depth in June 2003, presenting the case for considering changes to its hourly pay practices by noting that the then-current system for setting start rates "allows for inequity in pay," that Store Manager ability to over-ride the amount of performance increases "lead[s] to pay inequities," and that merit increases were problematic because "Managers have discretion on amount of merit increase which may led to inequity of pay," and "Manager has discretion on Associates who receive merit increases which may lead to inconsistency of administration." While Wal-Mart considered eliminating merit increases in 2003 because of these concerns, it did not do so then. Instead, Wal-Mart delayed eliminating this source of inequity until August 2006. The elimination of merit increases was done to increase consistency.

35. Wal-Mart made changes to hourly pay practices in mid-2004, in particular assigning each job to a new job class; many jobs which had previously been in one class were assigned to separate classes depending on department. As the proportion of women in the departments varied greatly, Wal-Mart's reliance on department to set job class ensured that disparities in pay rates by department would correlate with gender. Many jobs in departments in which women were over-represented were assigned to lower job classes, while those same job titles in departments over-represented by men were assigned to higher job classes. This differentiation in job class (and thus potential pay) was made by department even though the

Hay Group, whose work Wal-Mart relied upon, found that there was a "high degree of consistency in the primary role of Sales Associate job across departments."

36. When Wal-Mart made those changes, it also applied a "neutralization adjustment" that was designed to reduce the statistically significant differences for male and female employees, though only if within the same, newly-assigned job class, by giving larger increases to women.

37. Plaintiff brings this claim individually but does so with the knowledge of other Plaintiffs from the same Wal-Mart Region with similar experiences. (**See Regional Chart attached hereto as Exhibit C**).

## PLAINTIFF'S ALLEGATIONS

38. Ms. Rohdy was employed by Wal-Mart from 1991 through 2002, and worked during that period in Store 0771 which is in Wal-Mart Region 10. Ms. Rohdy is eligible for rehire.

39. During her 11 years of employment, Ms. Rohdy began as a Department Manager of Hardware and held various titles including Personnel Manager, softlines associate, department manager of housewares, support manager, safety team leader, cashier, CSM, and receiving. Her responsibilities while employed included hiring 500 additional employees while working in the position of personnel manager.

40. During employment, she was given glowing reviews, all but one "above standard (5 out of 5) except for a single year (2001) which included a time when she had to miss work due to her daughter's medical needs and despite providing a doctor's note and received a "3" out of "5".

41. When she became pregnant, her store manager Chuck stated, "why can't you be like those Vietnamese women who have a baby, drop it, and keep working."

42. It was so clear to Ms. Rohdy that her negative review had to do with her family care responsibilities, that she wrote "no more babies" into the comments.

43. While employed, Ms. Rohdy spoke with her Store manager, Chuck, about her interest in the Management In Training/Assistant Manager program, but was never given the opportunity. Instead, she was told she "was not cut out for the position" because she "had children." She was then told by management that the program "requires relocation and too much time – because you have children, and they are your priority, this isn't the job for you."

44. She watched as countless, less-experienced males were promoted to the role, including Damien Smith, Patrick (Last Name Unknown), and Mark (Last Name Unknown). She did not observe females promoted within her store.

45. Ms. Rohdy believes she was paid less than other similarly situated men during her employment within Region 10.

46. Specifically, Ms. Rohdy learned during employment that men were paid more than women, like when men were offered starting pay for positions into the meat department, they were offered as much as $17 to $18 per hour, whereas the women were offered approximately $9 per hour.

## STATEMENT OF CLAIMS

### COUNT I—VIOLATION OF TITLE VII
### DISPARATE TREATMENT

47. Plaintiff incorporates and realleges paragraphs 1 through 46 herein.

48. Wal-Mart denied Plaintiff pay equal to that earned by similarly situated men, on the basis of gender.

49. Wal-Mart denied Plaintiff equal opportunities for promotion to positions that she was qualified for and interested in, on the basis of gender.

50. Wal-Mart's conduct of engaging in discrimination against the Plaintiff working in by making compensation and promotion decisions on the basis of gender violates Title VII of the Civil Rights Act of 1964.

51. The Defendant has failed to comply with their statutory duty to take all reasonable and necessary steps to eliminate discrimination from the work place and to prevent it from occurring.

52. Wal-Mart's discriminatory practices described above have denied Plaintiff promotional opportunities and compensation to which they are entitled, in violation of Title VII.

53. Wal-Mart's alleged reasons, if any, for the discrimination against Plaintiff on the basis of gender is a mere pretext, as evidenced by the pattern or practice of discrimination against female employees generally.

54. Plaintiff has exhausted all of her administrative remedies prior to bringing this action. (Exhibits A and B).

55. As a result of Wal-Mart's violations, the Plaintiff has suffered damages.

56. As a direct and proximate result of the Defendant's willful knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe emotional distress, loss of skills, and mental anguish; Plaintiff has incurred other incidental expenses; Plaintiff has suffered related to the harm caused by Wal-Mart's violations.

57. Plaintiff has and will continue to suffer a loss of earnings and other employment-related benefits and job opportunities.

58. Plaintiff seeks an award of general and compensatory damages, reinstatement or front pay, back pay, and prejudgment interest.

59. In addition, Plaintiff is entitled to punitive damages for the Defendant's malice and/or reckless disregard of Plaintiff's federally protected rights.

60. As a further direct and proximate result of the Defendant's violation, Plaintiff has been compelled to retain the services of the undersigned firms. Plaintiff will incur and continue to incur reasonable attorney's fees and costs. Plaintiff requests that her attorney's fees be awarded pursuant to Title VII.

61. Wal-Mart did not have a reliable posting system that alerted or encouraged qualified applicants like her to apply. Often females like the Plaintiff learned about opportunities only after a candidate, often males, were placed into those positions. The pathway to management at Wal-Mart during Plaintiff's employment was a tap on the shoulder system. Plaintiff brings a claim for the loss of these promotional opportunities as well as the ones she specifically applied.

62. Pursuant to its lack of policies regarding posting of positions, there are likely numerous positions that she would have been qualified for but failed to apply because there was no notice provided. "[W]hen when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest." *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 532-33 (11th Cir. 1992).

63. Ms. Rohdy contends she was paid less than other similarly situated men during her employment within Region 10.

64. Ms. Rohdy contends Wal-Mart was aware of the discriminatory pay, treatment and the obvious disparity of females in managerial roles.

65. Plaintiff, therefore, requests relief as provided in the Prayer for Relief below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

a. A declaratory judgment that the practices complained of in this Amended Complaint are unlawful and violate 42 U.S.C. § 2000(e), et. seq., Title VII of the Civil Rights Act of 1964;

b. General and compensatory damages;

c. Reinstatement or front pay;

d. Back pay;

e. Punitive damages;

f. Costs incurred, including reasonable attorneys' fees, to the extent allowable by law;

g. Pre-Judgment and Post-Judgment interest, as provided by law; and

h. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues, claims, actions, and defenses in this case.

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

s/ Cathleen Scott
Cathleen Scott, Esq.
Florida Bar No.: 135331
Cscott@scottwagnerlaw.com
Lindsey Wagner, Esq.
lwagner@scottwagnerlaw.com
**Scott Wagner and Associates, P.A.**
Jupiter Gardens
250 South Central Boulevard, Suite 104
Jupiter, FL 33458
Telephone: (561) 653-0008

Facsimile: (561) 653-0020

Leslie M. Kroeger, Esq.
Florida Bar No.: 989762
lkroeger@cohenmilstein.com
Diana L. Martin
Florida Bar No. 624489
dmartin@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
Facsimile: (561) 515-1401

Joseph M. Sellers, Esq.
JSellers@cohenmilstein.com
Christine E. Webber, Esq.
Cwebber@cohenmilstein.com
**Cohen Milstein Sellers & Toll, PLLC**
1100 New York Ave NW, Suite 500 West
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-469
*Attorneys for Plaintiff*

## SERVICE LIST
## CASE NO. 19-cv-81016-RNS

| | |
|---|---|
| Kimberly J. Doud<br>kdoud@littler.com<br>LITTLER MENDELSON, P.C.<br>111 North Magnolia Ave, Suite 1250<br>Orlando, FL 32801<br>Telephone: 407.393.2900<br>Facsimile: 407.393.2929 | Scott A. Forman<br>SForman@littler.com<br>LITTLER MENDELSON, P.C.<br>333 S.E. 2nd Avenue, Suite 2700<br>Miami, FL 33131<br>Telephone:   305.400.7511<br>Facsimile:   305.603.2552 |
| Allan G. King<br>Email: AGKing@littler.com<br>Littler Mendelson, P.C.<br>100 Congress Avenue, Suite 1400<br>Austin, TX 78701<br>Telephone: 512.982.7252<br>Facsimile: 214.880.0181 | Stacey Bradford<br>Email: SBradford@littler.com<br>Littler Mendelson, P.C.<br>420 20th Street North, Suite 2300<br>Birmingham, AL 35203<br>Telephone: 205.421.4779<br>Facsimile: 205.449.9864 |